UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,   :   24-CR-334 (NJC)
:
:
:   United States Courthouse
-against-   :   Central Islip, New York
:
:
:   October 2, 2024
JOHN MENSCH,   :   2:00 p.m.
:
Defendant.   :

- - - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT and PLEADING
BEFORE THE HONORABLE NUSRAT J. CHOUDHURY
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:


For the Government: BREON S. PEACE, ESQ.
United States Attorney
Eastern District of New York
610 Federal Plaza
Central Islip, New York 11722
BY:   ANTHONY BAGNUOLA, ESQ.
ADAM TOPOROVSKY, ESQ.
Assistant United States Attorneys


For the Defendant:   ROBERT ANELLO, ESQ.
JEREMY TEMKIN, ESQ.
PETER MENZ, ESQ.


Court Reporter:   Marie Foley, RMR, CRR
Official Court Reporter
Telephone: (631) 712-6104
E-mail: Marie_Foley@nyed.uscourts.gov

Proceedings recorded by computerized stenography.
Transcript produced by Computer-aided Transcription.

(In open court; defendant present.)

COURTROOM DEPUTY: Good afternoon. This is 24-CR-334, USA v. John Mensch.

Counsel, please state your appearances for the record.

MR. BAGNUOLA: Good afternoon, your Honor. Anthony Bagnuola and Adam Toporovsky for the United States.

THE COURT: Good afternoon.

MR. ANELLO: Good afternoon, your Honor. Robert Anello, along with Jeremy Temkin and Peter Menz for John Mensch.

THE COURT: Good afternoon. Nice to see you.

Good afternoon, Mr. Mensch.

Okay. My name is Judge Choudhury. I'm the district judge who's presiding over your case.

Is it correct that you speak and understand English, sir?

THE DEFENDANT: Yes, English.

THE COURT: You do not have to stand when I'm speaking. Feel free to have a seat.

And this goes for both counsel for both sides as well.

If at any point today anything is said, Mr. Mensch, that you don't understand, that you need to

have repeated for any reason or that you want to just take a pause and discuss with your attorney, just let me know, let Mr. Anello know, and we'll give you the time that you need.

Feel free to get a glass of water. You have some there on your table in front of you.

THE DEFENDANT: Thank you.

THE COURT: We'll just make sure that you have the time that you need.

Okay?

THE DEFENDANT: Yes.

THE COURT: So, we're here today because you've been charged with a crime in an information, and I've also been informed that you wish to waive indictment and plead guilty to the charge in the information. Before we get to those issues, I just want to clear up one thing with counsel for the Government on the elements of the offense.

At trial, would the Government be required to prove that Mr. Mensch took one or more actions in furtherance of the scheme that's described in the information in the Eastern District of New York?

MR. BAGNUOLA: Your Honor, I think the requirement of proving an overt act is distinct from establishing venue.

But to answer your question as simply as I can,

4

the answer to both of those things is yes, the scheme has a jurisdictional nexus to the Eastern District of New York. In addition to that, the Government would be required to prove that Mr. Mensch and/or one or more of his co-conspirators committed an overt act in furtherance of the conspiratorial object.

THE COURT: And putting aside the overt act requirement, would it be beyond a reasonable doubt or preponderance of the evidence for the jurisdictional requirement?

MR. BAGNUOLA: Preponderance of the evidence.

THE COURT: Thank you so much. That was all I needed to talk about.

Anything you wanted to address on that, Mr. Anello?

MR. ANELLO: No, that sounds correct.

THE COURT: Okay.

So, Mr. Mensch, because you are arriving to federal court on a criminal charge for the first time, I will give you the same advisement of rights that I would give to anybody coming to federal court for the first time on a criminal charge.

I want to make sure that you understand that you have the right to remain silent. You are not required to make any statements. If you start to say something, you

can stop at any time and you don't need to make any further statements. But what you must understand is that any statements that you do make to anybody, except for your attorneys and their immediate legal team, could be used against you.

Do you understand that, Mr. Mensch?

THE DEFENDANT: Yes, your Honor.

THE COURT: And you also have the right to be represented by an attorney during all court proceedings, including this one, as you are. And during any questioning by authorities.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you reviewed the information charging you with a crime?

THE DEFENDANT: Yes.

THE COURT: Have you had time to discuss it with your attorney? Without telling me what was said, I'd like to know if you had a chance to speak with your lawyer.

THE DEFENDANT: Yes.

THE COURT: Mr. Anello, have you reviewed the charge in the information with Mr. Mensch and advised him of his rights?

MR. ANELLO: I have, your Honor.

THE COURT: Do you have any concern about

whether Mr. Mensch understands the charge against him?

MR. ANELLO: I have no concern about that, your Honor.

THE COURT: Would you like me to read the information, Mr. Anello, or would you like to waive reading of the information?

MR. ANELLO: We'll waive the public reading, Judge.

THE COURT: Thank you.

Mr. Mensch, have you fully discussed the charge and your case with your attorney?

THE DEFENDANT: Yes, your Honor.

Q. Do you understand the charge to which you seek to plead guilty?

THE DEFENDANT: I do, your Honor.

THE COURT: And have you had sufficient time to discuss it with your attorney whether or not to make the decision to plead guilty?

THE DEFENDANT: Yes, your Honor.

THE COURT: Are you fully satisfied with the representation and counsel and advice given to you by your attorney?

THE DEFENDANT: Yes.

THE COURT: Mr. Toporovsky and Mr. Bagnuola, I

see that the Government has identified two organizational victims for the crime that is charged. I believe one is Bridgehampton National Bank, whose parent is Dime Community Bancshares, Incorporated, and the other with Wallkill Valley Federal Savings and Loan whose parent is Wallkill Valley Bank Corp.

Has the Government notified these institutions of today's plea hearing and their right to attend?

MR. BAGNUOLA: We certainly have, your Honor. And so the Court is aware and so the record is complete, James Manseau, that's M-A-N-S-E-A-U, who is the executive vice-president and chief banking officer for Dime Bank is here for today's proceedings.

THE COURT: Thank you very much.

Because this is the first time that Mr. Mensch and counsel for both parties are before me, I am going to address the Government's obligations to disclose information that is favorable to Mr. Mensch.

Under Federal Rule of Criminal Procedure 5 F, I direct the Government to comply with its obligations under the Supreme Court's decision in Brady versus Maryland and its progeny, to disclose to the defense all information, whether admissible or not, that is favorable to Mr. Mensch and that includes information material to either guilt or to punishment and known to the Government.

This is an important obligation and possible consequences for noncompliance may include dismissal of individual charges or the entire case, exclusion of evidence, and professional discipline or court sanctions on the attorneys responsible.

The Government must disclose not only what they know about, but must ask of all agents of the Government about all potentially favorable information relevant to guilt or punishment, and it must produce that material in a timely manner so the defense may make use of it.  Where materiality determinations are close calls, I suggest the Government err on the side of disclosure.

Does the Government confirm that it understands these obligations and will fulfill them?

MR. BAGNUOLA:  We understand them and we will comply, your Honor.

THE COURT:  Thank you very much.

I will enter a written order confirming these obligations following this proceeding, and I direct the Government to review it and to adhere to it closely.

So, Mr. Mensch, I understand your clients wishes to waive indictment and plead guilty to the information.

And, Mr. Mensch, as Mr. Anello previously stated, he advises me that you wish to waive indictment and plead guilty to the information that we discussed

before.

Is that correct?

THE DEFENDANT: That is correct, your Honor.

THE COURT: So, as the district judge assigned to your case, it's my job to make sure that the details of a plea are something that you really understand and are voluntarily agreeing to accept deciding whether to plead guilty to a criminal charge in federal court may be one of the most, if not the most difficult decision that you have ever had to make. Most people that do this have lengthy conversations with their counsel, as well as other people close to them. But I as the judge still need to ask you questions to make sure you understand the plea that you're capable of making this decision for yourself, and that the final decision is yours and yours alone. So if you do not understand any of my questions or any of the terms that I use, please say so and I will reword the question.

I try to use as plain language as possible, but because I need it make sure your plea meets legal requirements, I need to use some legal terms as well. But if you don't understand them, simply let me or Mr. Anello know, and we'll make sure you have the information you need.

Okay?

THE DEFENDANT: Okay.

THE COURT: And again, if you'd like to consult with your attorney at any time for any reason, please let me know. You don't have to feel bad about it. We'll give you as much time as you need.

Okay?

THE DEFENDANT: Okay.

THE COURT: I do need you to answer these questions under oath and I'll ask my deputy, Mr. Morabito, to issue the oath to you.

(Defendant sworn.)

THE COURT: Mr. Mensch, you are now under oath. This means that if you answer any of my questions falsely, your answers may later be used against you in another case for perjury or making a false statement.

Do you understand that?

THE DEFENDANT: I understand, your Honor.

THE COURT: What is your full name?

THE DEFENDANT: John Brian Mensch.

THE COURT: How old are you?

THE DEFENDANT: 54.

THE COURT: I want to ask you some questions about your time in school to help make sure you understand your rights and what's happening here today.

Where did you attend school when you were a child?

THE DEFENDANT: I attended William Floyd as a grade school and I graduated out of Hampton Bays high school.

THE COURT: How far did you get in school?

THE DEFENDANT: I couldn't hear you. Excuse me?

THE COURT: How far did you get in school?

THE DEFENDANT: Irrelevant completed two semesters in college.

THE COURT: Thank you.

Did you ever repeat any grades in school?

THE DEFENDANT: No.

THE COURT: Did any teacher or anyone else in school ever tell you or your parents that you needed extra help with reading or writing?

THE DEFENDANT: I was in reading classes, yes.

THE COURT: And until what grade was that?

THE DEFENDANT: Junior high school.

THE COURT: And in high school did you also need additional help with reading?

THE DEFENDANT: No.

THE COURT: Okay.

And as far as you know, have you ever been diagnosed with any learning disability or learning differences, things like dyslexia or attention deficit

disorder or autism spectrum disorder?

THE WITNESS:  No, your Honor.

THE COURT:  And you told me before that you're able to speak and understand English, correct?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Anello, have you been able to communicate with your client in English?

MR. ANELLO:  Yes.

THE COURT:  Mr. Mensch, have you ever been treated or hospitalized for any psychological condition --

THE DEFENDANT:  No.

THE COURT:  -- things like depression, anxiety, or anything else related to your mental health or mental state?

THE DEFENDANT:  No, your Honor.

THE COURT:  Are you currently or have you recently been under the care of a doctor or psychiatrist for any reason?

THE DEFENDANT:  No, your Honor.

THE COURT:  Have you ever been treated or hospitalized for any type of addiction to or problems with drugs or alcohol?

THE DEFENDANT:  No.

THE COURT:  Have you taken any medicine or pills in the last two days?

THE DEFENDANT:  No.

THE COURT:  Have you consumed any alcohol in the past two days?

THE DEFENDANT:  No.

THE COURT:  Have you consumed any drugs in the past two days, including but not limited to marijuana or cannabis?

THE DEFENDANT:  No.

THE COURT:  Is your mind clear today?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand what is happening today?

THE DEFENDANT:  Yes.

THE COURT:  So, Mr. Mensch, we discussed before the information that charges you with a crime.

Have you fully discussed all of the information in that information as well as the case in general, with your attorney?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  So, you have been charged with conspiracy to commit bank fraud in violation of 18 United States Code 371 and 18 United States Code Section 1344.

If you were to proceed to trial on this charge, the Government would have to prove the following things beyond a reasonable doubt.

First, that there was an agreement between two people to defraud a federally insured or federally chartered bank, or to obtain money or property of such a bank under false pretenses, and proof of either of these things would be sufficient to support a conviction.

Second, the Government must prove that one or more members of the conspiracy committed an overt act to further the conspiracy.

And third, the Government must prove that you knowingly engaged in the conspiracy intending to commit the offense of bank fraud.

That in turn requires the Government to prove, first, that you engaged in a deceptive course of conduct by making material misrepresentations; and second, that you executed or attempted to execute the scheme to defraud a bank or to obtain the bank's property under false pretenses.

If the conspiracy was to defraud the financial institution, the Government must also prove that you intended to defraud the financial institution. By contrast, if the conspiracy was to obtain bank property, the Government must prove that you intended to obtain bank property.

And finally, the Government must prove by a preponderance of the evidence that you took one or more

actions in furtherance of the scheme to defraud here in the Eastern District of New York.

Before I continue, I want to confirm whether there are any questions or concerns from counsel for both parties.

MR. BAGNUOLA:  None from the Government, your Honor.  Thank you.

MR. ANELLO:  And none from the defense, your Honor.

THE COURT:  Okay, thank you.

So, Mr. Mensch, do you understand the charge to which can you seek to plead guilty?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you also understand that the Government has alleged a forfeiture allegation against you with respect to the charged offense?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  This allegation puts you on notice that if you are found guilty or plead guilty to this charge, the Government will seek to forfeit or take away from you, any property or proceeds that you obtained through the crime or to commit the crime.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Instead of an indictment, the

felony charge against you has been brought by the filing of an information by the United States attorney. Because this is a felony charge, you have a constitutional right to be charged by an indictment returned by a grand jury, but you can waive that right and consent to being charged by an information of the United States attorney.

Unless you waive indictment, you may not be charged with a felony unless a grand jury finds by return of an indictment that there is probable cause to believe that a crime was committed and that you committed that crime. If you do not waive indictment, the Government must present its case to the grand jury and ask it to indict you in order for you to be charged with the felony offense.

A grand jury is composed of at least 16 but not more than 23 people, and at least 12 grand jurors must find that there's probable cause to believe you committed the crime with which you are charged before you may be indicted. The grand jury might or might not indict you.

If you waive indictment by grand jury, this case will proceed against you on the U.S. Attorney's information just as though you had been indicted.

Do you understand, Mr. Mensch, your right to indictment by a grand jury?

THE DEFENDANT: Yes, your Honor.

THE COURT:   Are you willing to waive that right?

THE DEFENDANT:   Yes, your Honor.

THE COURT:   Have you discussed this decision with your attorney?

THE DEFENDANT:   Yes.

THE COURT:   Have any threats or promises been made to induce you to waive your right to indictment by grand jury?

THE DEFENDANT:   No, your Honor.

THE COURT:   Are you waiving your right to indictment voluntarily and of your own free will?

THE DEFENDANT:   Yes.

THE COURT:   Mr. Anello, are you aware of any reason why Mr. Mensch should not waive indictment?

MR. ANELLO:   I am not, your Honor.

THE COURT:   Mr. Mensch, I see that you have signed a form indicating that you waive your right to be charged by indictment.  That form will be marked by Mr. Morabito as Court Exhibit 1.  And I'm going to ask Mr. Morabito to show you the form to confirm that this is your signature at the bottom of the page.

(Pause.)

THE DEFENDANT:  Yes, your Honor, that's my signature.

THE COURT: Thank you very much.

So I find that, Mr. Mensch, your waiver of indictment is knowingly and voluntarily made, and I accept it.

So, having waived indictment, Mr. Mensch, I understand that you wish to plead guilty to the charge in the information and that you're doing so pursuant to an agreement with the Government.

And, Mr. Anello, it's my understanding that this is what your client wishes to do.

Mr. Anello, have you discussed the matter of pleading guilty with your client?

MR. ANELLO: I have, your Honor.

THE COURT: Does he understand the rights that he would be waiving by pleading guilty?

MR. ANELLO: He does, your Honor.

THE COURT: Is he capable of understanding the nature of these proceedings?

MR. ANELLO: He is, your Honor.

THE COURT: Do you have any doubt as to his competence to plead at this time?

MR. ANELLO: I do not.

THE COURT: Have you advised him of the maximum and minimum sentence and fine that can be imposed?

MR. ANELLO: Yes, your Honor.

THE COURT: And have you discussed with him the effect of the sentencing guidelines?

MR. ANELLO: I'm sorry, your Honor.

THE COURT: Have you discussed with him the effect of the sentencing guidelines?

MR. ANELLO: Yes, your Honor, we have.

THE COURT: So, Mr. Mensch, I'm now going to explain to you certain rights that you will be giving up if you enter a guilty plea. Please listen indicatively and again stop me if you need any information.

The first and most important thing you must understand is that you do not have to plead guilty even if you are guilty. What that means is that even if you are guilty, you have a choice. It is up to you to decide to do, not your lawyer or anyone else. You may choose to plead guilty, as you apparently wish to do, or you may instead choose to plead not guilty and require the Government to prove your guilt beyond a reasonable doubt at trial.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: If you plead not guilty, under the Constitution and laws of the United States, you are entitled to a speedy and public trial by a jury with the assistance of counsel on the charge contained in the

information.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And at trial, you would be presumed innocent.  That's because in our legal system, the Government has the burden of proving a defendant's guilt.  The Government would need to convince a jury of twelve people to agree unanimously that you are guilty beyond a reasonable doubt, and if the Government cannot do that, the jury must find you not guilty even if you know you are guilty.  By pleading guilty, you are giving up your right to have the Government prove that you are guilty beyond a reasonable doubt.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And at the trial and at every stage of your case, you would be entitled to be represented by an attorney, whether Mr. Anello or another attorney, and if you could not afford one, one would be appointed to represent you.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  In the course of the trial, the witnesses for the Government would have to come to court and testify in your presence.  Your attorney would have

the right to question the witnesses for the Government, to object to evidence offered by the Government, and to offer evidence on your behalf, which includes the right to compel witnesses to come to court and testify in your behalf even if they do not wish to do so.

Your attorney would be able to raise any defenses you may have under the law, and by pleading guilty, and if I accept your plea, you are giving up your rights to confront any witnesses who would testify against you and to offer evidence and defenses on your own behalf.

Do you understand that?

A.   Yes, your Honor.

THE COURT:   At trial, you would have the right to testify on your own behalf, but only if you chose to do so.   Under the Constitution, a defendant in a criminal case cannot be forced to testify in their own trial and say anything that can be used against them or to show them that they are guilty.

If you went to trial and decided not to testify, the Court would instruct the jury that it could not hold your silence against you.   This is called your right against self-incrimination.   By pleading guilty, you are admitting your guilt and giving up your right against self-incrimination.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Before I can accept your plea, I need to ask you questions about what you did that makes you guilty of the crime. I'm legally required to ask these questions to be certain that you, in fact, committed the crime. It's not enough for you to say you're guilty. You must tell me what it is that you did that makes you guilty. By answering my questions, you will be giving up your right against self-incrimination.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Mr. Mensch, do you understand each and every one of the rights that I have just explained to you?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you have any questions for me at this point about anything that we've discussed so far today?

THE DEFENDANT: Not at this time, your Honor.

THE COURT: Are you willing to give up your right to trial and all those other rights I have just discussed with you?

THE DEFENDANT: Yes, your Honor.

THE COURT: I understand that you are pleading guilty pursuant to an agreement with the Government. I

23

have this agreement here in front of me.  I will ask Mr.

Morabito to mark this Court Exhibit 2.

I also just want to note that I see on the signature page it looks like these are photocopy signatures, but that both parties understand that these are actual signatures because of the method by which signatures were executed?  I just want to make sure that's clear from the Government and from Mr. Anello.

MR. BAGNUOLA:  Yes, your Honor, the agreement was executed in parts and transferred back and forth.  So there is no version with four original signatures on it.

THE COURT:  Mr. Anello?

MR. ANELLO:  That is correct, your Honor.

THE COURT:  Thank you so much.

So this is Exhibit Number 2, and I will ask you to confirm that this is your signature, Mr. Mensch, on the last page, which is page 7.

(Pause.)

THE DEFENDANT:  Yes, your Honor, that's my signature.

THE COURT:  Thank you so much.

So you signed this agreement, correct?

THE DEFENDANT:  That's correct.

THE COURT:  Did you have the opportunity to read it and discuss it with your attorney before you

24

signed it?

THE DEFENDANT:   Yes.

THE COURT:   Without telling me how long you spent speaking with your attorney or what you discussed, do you feel that you had enough time to review the agreement closely with your attorney before you signed it?

THE DEFENDANT:   Yes, I did.

THE COURT:   Did you understand the agreement?

THE DEFENDANT:   Yes.

THE COURT:   Mr. Anello, did you have sufficient time to review the agreement with your client?

MR. ANELLO:   I did, your Honor.

THE COURT:   And for the Government, are there any provisions of the agreement that you would like to highlight?

MR. BAGNUOLA:   Not at this time, your Honor. Although I'm happy to expound upon any portion that the Court deems appropriate.

THE COURT:   Thank you.

Mr. Mensch, do you have any questions about the agreement?

THE DEFENDANT:   No, your Honor.

THE COURT:   Any questions for me?

THE DEFENDANT:   No, your Honor.

THE COURT:   Does the agreement represent your

*Marie Foley, RMR CRR*
*Official Court Reporter*

entire understanding with the Government?

THE DEFENDANT: Yes.

THE COURT: Has anyone made any promise or assurance that is written in the agreement in order to persuade you to accept it?

THE DEFENDANT: No.

THE COURT: Has anyone threatened you in any way to persuade you to accept it?

THE DEFENDANT: No, your Honor.

THE COURT: Are you pleading guilty of your own free will because you are guilty?

THE DEFENDANT: Yes.

THE COURT: Mr. Anello, were all formal plea offers from the Government conveyed to Mr. Mensch?

MR. ANELLO: They were, your Honor.

THE COURT: So for the Government, I will ask you, I addressed the Brady obligations earlier and I will just round this out. For Mr. Bagnuola and Mr. Toporovsky, as officers of the Court, can you confirm that before today's proceeding you reviewed all relevant case documentation or other tangible information in this case and made all inquiries of federal or state agents and/or state agents and other members of law enforcement who are required by law to determine whether or not there's any exculpatory information in the possession of the

26

Government that may be material either to guilt or punishment in this case?

MR. BAGNUOLA: Yes, your Honor, I can confirm that.

THE COURT: Thank you.

And with the understanding that the Government's specific Brady disclosure obligations may differ in the guilty plea and trial context, can you confirm as officers of the court that you've timely disclosed all Brady material as required by law here where a defendant pleads guilty insofar as the contours of that obligation have been set forth by the federal courts in this circuit and the United States Supreme Court?

MR. BAGNUOLA: Yes, your Honor. The Government is not in possession of any material that would fall within its obligations under Brady and its progeny, but I can confirm my understanding on behalf of the Government and as an officer of the court that I understand what your Honor just said and will continue to comply with my continuing obligations moving forward in this case.

THE COURT: Thank you so much.

And do you further confirm that you've complied to date with your obligations under New York State Rule of Professional Conduct 3.8(b) to timely disclose to the defense all evidence or information known to you that

tends to negate the guilt of the accuse the, mitigate the degree of the offense, or reduce the sentence?

MR. BAGNUOLA: Yes, your Honor. Again, with the caveat that I am aware of no such evidence. To the extent that I become aware of it, I will timely disclose it to my adversary.

THE COURT: Thank you so much.

So, Mr. Mensch, I am now going to tell you about some of the possible penalties to the crime to which you will be pleading guilty. So again, this is conspiracy to commit bank fraud in violation of 18 United States Code Section 371 and 18 United States Code Section 1344.

The maximum term of imprisonment for this crime is five years. There is no mandatory minimum term of imprisonment. Any term of imprisonment may be followed by a term of supervised release. There is no minimum term of supervised release. And the maximum supervised release term is three years.

Supervised release refers to the period of time when a person convicted of a crime is subject to supervision by the Probation Department after completing any term of imprisonment. If you were to violate the conditions of supervised release, you could be given additional time in prison.

Do you understand that?

28

THE DEFENDANT: Yes, your Honor.

THE COURT: So, what this means is if you are sentenced to a period of supervised release, you will have to follow the rules of supervised release. If you violate those rules, you could be sent back to prison without a jury trial because of what's called a violation of supervised release. If a court finds that you did commit a violation, you could be sentenced to serve additional time in prison for up to two years, and those additional two years would be without any credit for the time you already served in prison as a result of your sentence and without any credit for the time you spent on post-release supervision.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: You also face a maximum possible fine of $250,000, or twice the gross gain derived from the offense or twice the gross loss to persons other than yourself, whichever is greater. And I must order you to pay a mandatory special assessment of $100.

I also must impose, and you will be required to pay, restitution in the full amount of any victim' loss in an amount to be determined. I cannot decline to award restitution based on your financial circumstances or the fact that any victims have or may be entitled to receive

compensation for their injuries from any other source.

As we mentioned, you are also facing a forfeiture allegation as to the count of the information that you are pleading guilty to.

I'm not going to inquire in into your citizenship status today, but I want to make sure that you have had an opportunity to discuss the immigration consequences of your plea with your attorney before we proceed.

Do you need some additional time to discuss any potential immigration consequences with Mr. Anello?

THE DEFENDANT: No, not at this time.

THE COURT: And do you understand the effect a guilty plea will have on your right to remain in this country after any sentence is served?

THE DEFENDANT: Yes, I understand.

THE COURT: Are you nevertheless willing to plead guilty despite the possible immigration consequences of doing so?

THE DEFENDANT: Yes.

THE COURT: In addition, because the offense to which you seek to plead guilty is a felony offense, if I accept your guilty plea, you will be determined guilty and that may deprive you of valuable civil rights, such as the right to vote, the right to hold public office, the right

to serve on a jury, and the right to possess any kind of firearm.

The rights you may lose as a person convicted of a felony may depend on the state where you reside while incarcerated or after your incarceration. Those rights may also change in the future based on each state's laws or the federal government's laws that may apply to people convicted of felony crimes.

For example, a state that currently permits people who've been convicted of a felony crime to vote or possess a firearm, the state could in the future change that law to take away those rights.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Mr. Mensch, do you understand all of the possible consequences of your plea as I've just explained them to you?

THE DEFENDANT: Yes, I do.

THE COURT: Do you have any questions for me or for your attorney at this time?

THE DEFENDANT: Not at this time.

THE COURT: Okay.

As your attorney has explained to you, there are guidelines that I must follow in determining the appropriate sentence in your case. Under the Sentencing

Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. These guidelines are advisory, and I will consider them, along with the particular facts and circumstances of your case and all of the sentencing factors set forth in a federal statute known as 18 United States Code Section 3553(a), and I will look at all of those factors in determining your sentence.

Have you or your attorney discussed how the advisory sentencing guidelines might apply in your case?

THE DEFENDANT: Yes, your Honor.

THE COURT: Has the Government estimated what the guideline range is likely to be in this case?

MR. BAGNUOLA: We have, your Honor. With credit for acceptance of responsibility and a timely plea, the Government estimates the defendant's advisory guidelines range to be 70 to 87 months. However, because there is a 60-month statutory cap under Section 371, the effective guidelines range is 60 months.

I will say, again for completeness of the record and for your Honor's reference, Mr. Mensch has stipulated to that guidelines calculation except to the extent that he has expressly carved out the right to challenge the applicability of a four-point enhancement for

substantially jeopardizing the soundness of a financial institution. That will be a matter that is presented to the Court at the time of sentencing, but for today's purposes, the Government estimates the maximum exposure under the guidelines to be effectively 60 months.

THE COURT: Thank you.

Mr. Anello, does the defense have a different estimate?

MR. ANELLO: Your Honor, Mr. Bagnuola correctly identified the four point enhancement that we would assert does not apply, and that would make the guideline range 46 to 57 months, a level 23. But if the four point enhancement did apply, then it would be 60 months.

THE COURT: Thank you.

So, Mr. Mensch, what you should understand is that these estimates that you've heard from the Government and from your attorney could be wrong. I will not be able to determine the advisory guideline range for your case until after the Probation Department prepares what is called a presentence investigation report. That doesn't happen until after you enter a plea.

At that point, your lawyer and the Government will have the opportunity to closely review the Probation Department's report, to make any objections to information contained in that report, including how the probation

officer calculates the advisory guideline range. And I will evaluate those objections. I'll think about them carefully, and then I will make a final determination as to what the advisory guideline range is in your case.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

MR. BAGNUOLA: I'm so sorry, your Honor.

THE COURT: Go ahead.

MR. BAGNUOLA: I'm terribly sorry to interrupt. I just want to make sure that the record is clear and that Mr. Mensch has his expectations exactly right as he goes into this proceeding.

Under paragraph 2 of the guidelines, the Government's estimate reflects a total offense level of 30. That's where the estimate of -- the total offense level is 30. If there's a four-point reduction, it brings it to 26. I think Mr. Anello said it would bring it to a 23.

Might we take just one second?

THE COURT: Yes, absolutely. Take a minute.

(Pause.)

MR. BAGNUOLA: I'm sorry, your Honor. That's my mistake. I had begun by saying with acceptance of responsibility and a timely plea, the 30 comes down to a 27 with an additional four points F Mr. Mensch is

successful in contesting this enhancement at sentencing, it would, in fact, bring it down to a 23.

THE COURT: Okay.

MR. BAGNUOLA: I apologize for the disruption, but I'm glad that the record is clear.

THE COURT: It's better to clear it up.

I think what you can see, Mr. Mensch, in real-time is that calculating the advisory guidelines range can be complicated. And as I mentioned, the Probation Department's going to put together this report. It's going to contain certain facts in it that they glean from interviewing you and other people, and you and your lawyer will have a chance to object to those facts. The Government will as well. I will resolve those objections and I will determine what the appropriate advisory guidelines range is, and I just want you to know that the various ranges you've heard today can be wrong.

Do you understand that?

THE DEFENDANT: Yes, your Honor. And I appreciate that.

THE COURT: So, after I determine the advisory guideline range, I have the authority, in some circumstances, to sentence you more or less than the advisory guidelines sentencing range. The law also requires me to look at other sentencing factors under the

statute that I mentioned before, 18 United States Code Section 3553(a), which may lead me to impose a sentence that is either greater than or less than this advisory guideline range that I will calculate.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: The sentence I impose may be different from any estimate that your attorney may have given you.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: As you sit here today, there is no guarantee as to a particular guideline range or sentence. I will have to determine what that range is, and then after I determine that, I'm not required to sentence you within it. I may have the ability to go up or down, based on certain sentencing factors that Congress told me to look at.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: If the advisory guidelines range in the presentence investigation report prepared by Probation is different than the guideline range your attorney may have advised you of or that you expect, you cannot take back your guilty plea.

36

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And as you sit here today, there is no way for you to know what your ultimate sentence will be.  If the ultimate sentence I impose is different than what you hope for or what you expect, you cannot take back your plea.  You may, in some cases, have a right to appeal your sentence, but you cannot take back your guilty plea.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  In addition, if I impose a sentence that the Government believes is too lenient or that if they believe I didn't follow the law in determining the appropriate sentence in your case, the Government may also choose to appeal your sentence, and if they succeed in such an appeal, this case would come back to me or another judge to sentence you, and at that point, you would be sentenced all over again and there's no guarantee as to what your sentence will be.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  You should also understand that there is no parole in the federal system, and that if you are sentenced to time in prison, you will not be released on parole.  Parole refers to the release of a person from

prison before the completion of their sentence on the promise of good behavior and usually subject to some conditions.

So, Mr. Mensch, we talked a little bit about the fact that in some circumstances you or the Government may have the right to appeal any sentence that I might impose, but by entering into the plea agreement that you signed, which we talked about earlier at Court Exhibit 2, and by entering a plea of guilty, you are agreeing to waive, or give up, your right to appeal or collaterally attack any part of your conviction or sentence so long as I sentence you to 60 months or less in jail, which relates to five years.

Do you understand?

THE DEFENDANT:   Yes, your Honor.

THE COURT:   Do you have any questions about the rights you are giving up, the punishments you face, the agreement, the nature of the charges, or anything else relating to this matter?

THE DEFENDANT:   Not at this time, your Honor.

THE COURT:   Mr. Mensch, are you ready to plead guilty?

THE DEFENDANT:   Yes.

THE COURT:   Mr. Anello, do you know of any reason why your client should not plead guilty?

38

MR. ANELLO:  I do not, your Honor.

THE COURT:  Mr. Mensch, what is your plea to the single count set forth in the information, conspiracy to commit bank fraud, guilty or not guilty?

THE DEFENDANT:  Guilty, your Honor.

THE COURT:  Are you making this plea of guilty voluntarily and of your own free will?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Has anyone threatened or forced you to plead guilty?

THE DEFENDANT:  No.

THE COURT:  Other than the details of what is written down in the plea agreement with the Government that you signed, has anyone made any promise to you about what would or could happen as a result of your plea of guilty?

THE DEFENDANT:  No.

THE COURT:  Has anyone made any promises to you as to what your sentence will be?

THE DEFENDANT:  No.

THE COURT:  So now I need to ask you about the specific criminal charge to which you're pleading guilty.

Tell me in your own words what makes you guilty of conspiracy to commit bank fraud.  And you can read from anything you've prepared if that is what you would like to

do.

THE DEFENDANT:  Your Honor, I have worked in the school bus business since 1984.  When I started working for a school bus company owned by my father.  In or about 2011, after my father's death, I started my own school bus company that serviced two school districts here in Long Island and Suffolk County.  Over the next five years, my bus company that I owned has attained additional contracts.  I operated these bus companies out of my Medford, New York location, Eastern District of New York State.

Beginning in 2016, my business experienced serious financial trouble.  Unfortunately, I attempted to resolve these problems by taking out a series of usurious hard money loans and other forms of financing.  The financial difficulties worsened and starting in October of 2017, the bus company started writing checks from other accounts at Wallkill Savings Bank, Wallkill Valley Bank in Wallkill, New York and were deposited into accounts in Bridgehampton National Bank in Bridgehampton, New York, and then writing those checks from Bridgehampton National Bank accounts and then they were deposited into the Wallkill bank.

Because both banks credited any deposit made into those accounts immediately and gave me those funds,

writing and depositing checks in this fashion enabled the bus companies to pay the bills -- were able to pay the bills, payroll, and other expenses that they did not actually have significant funds to pay.

Between October 2017 and September of 2018, I knew and approved the check kiting scheme and had conversations with the bus companies' chief financial officer at that time about the checks and allowed further the scheme by writing and depositing some of those checks.

I also knew that Bridgehampton National Bank and Wallkill Valley Bank were insured by the FDIC.

During this period, I knew that the bus companies did not have enough money in our accounts to cover the checks that we were depositing. I understood that I was violating the law by agreeing with the bus companies' chief financial officer at the time to defraud the banks into giving us access to money based on checks that we could not cover.

I deeply regret my conduct and I apologize for my actions.

THE COURT: Thank you very much.

Okay. Just give me a moment here, please.

(Pause.)

THE COURT: So, you mentioned that you worked with the chief financial officer of the company. Is that

right?

THE DEFENDANT: Yes.

THE COURT: And what was the purpose of the scheme?

THE DEFENDANT: The purpose of the scheme was the school district at the time wasn't paying the bus company for services and there was a shortfall, and the purpose was to make sure that we had paid the payroll and the people that worked for me at the time.

THE COURT: So, you mentioned a couple of times that the company wrote checks.

What was your role specifically in that conduct?

THE DEFENDANT: It -- in being instructed by the financial officer of my company, she then instructed me to deposit certain checks that she had asked me to write on certain companies between the two banks, and I participated in depositing those checks.

THE COURT: And in your participation in depositing those checks, what was your intention?

THE DEFENDANT: The bank was giving me instant availability and it was my understanding, based on communicating with the CFO, that that was available funds to us as a loan and that we can use that money to pay the payroll and the employees of the company.

THE COURT: Okay. I'm going to take a pause and

actually speak to counsel for a moment.

I'm concerned that the intent requirement has not been satisfied. I'll ask the Government for their position on this.

MR. BAGNUOLA: If you're -- well, I agree with you that Mr. Mensch has not admitted to the intent requirement. Whether or not the Government could prove his intent is another matter entirely. What I just heard is not an acceptance of responsibility, I agree with you.

THE COURT: And I understand that one of the elements, as I recited them earlier today, of the charge is that Mr. Mensch knowingly engaged in the conspiracy intending to commit the offense of bank fraud, and I did not hear an allocution that satisfies that element.

MR. ANELLO: May I have one moment, your Honor?

THE COURT: Yes.

(Pause.)

THE COURT: And I'll actually take a moment myself right now. So everyone just take a breath. It's okay.

(Pause.)

THE COURT: Okay. I have two concerns. One as I mentioned is the element of the conspiracy charge requiring an intention to commit the offense of bank fraud.

43

The second is the element that Mr. Mensch made material misrepresentations. I heard that Mr. Mensch was involved in an agreement with the chief financial officer. Then I heard that the bus company wrote checks. I heard that Mr. Mensch sought to obtain money, he framed them as loans, through the check writing.

So I'm missing, I believe, two elements of the offense.

MR. BAGNUOLA: Well, your Honor, with respect to your Honor's first concern about a material misrepresentation, I don't believe that the bank fraud statute actually requires a material misrepresentation or omission, particularly with respect to the prong of the offense that doesn't require intent to deceive as long as the goal is to obtain the bank's money or property under false pretenses.

THE COURT: So, I disagree with you because I looked at the Second Circuit's recent decision affirming Judge Cote's verdict at trial in the Vado case, V-A-D-O. I can provide you with a case citation later.

MR. BAGNUOLA: Sure.

THE COURT: But I did look at that Second Circuit decision, and the Second Circuit did indicate that the defendant in such pleading guilty -- or, I'm sorry, to be found guilty to conspiracy to commit bank fraud must

engage in a deceptive course of conduct by making material misrepresentations.

Mr. Anello, do you have any position on that issue?

MR. ANELLO: Your Honor, I think the allegation and what occurred would probably satisfy that because I think what Mr. Mensch will be able to clarify is that he understood that the banks did not know that the checks he was giving them were not backed by sufficient funds, and so he misled the banks in that way and that was the purpose of the kiting.

I think part of the problem was the use of the term "loan" which he can explain he misused. What he was attempting to explain is that the banks gave them same-day clearing, assuming that they were getting good checks. And because they weren't getting good checks, what they thought they were clearing ended up being a check that didn't have funds behind it.

So, the issue of loan he was using in a colloquial way to say, you know, we got the money and then we were going to cover it with another check. But from the bank's perps, they believed they were getting checks that were -- that had sufficient funds in the other bank because it was one bank's check going to another bank.

THE COURT: And I understand kiting and I

understand those allegations. I understand the clarification that you just shared. I think I was not hearing those two issues that I just identified.

So I'll let Mr. Mensch add anything he'd like to add to what he said before.

THE DEFENDANT: Your Honor, when I said "loan" I misspoke and used the word "loan" in my statement.

I know that the banks were not aware that the checks were no good and I took the money from one bank that I was not -- wasn't entitled to and wrote it to the other bank.

THE COURT: So, I think that handle material misrepresentation.

I don't know if I still have intention to commit the offense of bank fraud and that that was the purpose for engaging in the conspiracy.

Happy to hear from the Government or from defense counsel on this.

MR. BAGNUOLA: At the appropriate time when your Honor -- when your Honor would like, the Government can outline what its proof at trial, approximately, would look like. I'd like to give Mr. Anello an opportunity to give that gap before I do that so as not to be suggestive about what I believe happened.

THE COURT: Okay.

Mr. Anello, do you understand to add anything at this point?

MR. ANELLO:  Your Honor, could I have it back your concern because I'm not sure -- I was looking at this and I'm not sure I got it all.

THE COURT:  So I think my main concern has to do with the basic element of the conspiracy charge which is that Mr. Mensch knowingly engaged in the conspiracy intending to commit the offense of bank fraud.

Please feel free to take some time.

(Pause.)

MR. ANELLO:  Your Honor, if I may, in the allocution before the questioning, I think Mr. Mensch said, I just want to see if this does address your concern, "I understand I was violating the law by agreeing with the bus company's chief financial officer to defraud the banks into give us access to money based on checks that we could not cover."

So, I know when he misused the term "loan" it may have, sort of, sewn some confusion, but I do think that covers the element of the intent to defraud.  But if it's not, I'm happy to have it clarified.

THE COURT:  I will take the Government's position on that.  Do you believe that that sentence satisfies the intent requirement?

MR. BAGNUOLA: I do, your Honor. At bottom, what I heard Mr. Mensch to say was that he agreed with at least the CFO of his company to engage in this check kiting scheme for the purpose of obtaining money they knew they were not entitled to.

THE COURT: Okay. I'm satisfied with that part of the allocution. Thank you, Mr. Anello, for clarifying it.

MR. ANELLO: Thank you, your Honor. I apologize for any confusion.

THE COURT: No need to apologize.

So, based on the information given to me, as well as my observations of Mr. Mensch and his demeanor here in court, and the representations of counsel, I do find that the defendant is fully competent and capable of entering an informed plea, aware of the nature of the charges and the consequences of the plea, and that the plea of guilty is a knowing and voluntary plea and is supported by an independent basis in fact containing the essential elements of the offense.

I therefore accept your guilty plea, Mr. Mensch, adjudicate you guilty of conspiracy to commit bank fraud in violation of 18 United States Code Section 371 and 1344.

Ill will give the Government just a chance to

48

say what they had wanted to say before about what the Government would prove at trial.

MR. BAGNUOLA: Only if the Court thinks it would be helpful.

THE COURT: At this point, I don't need T I didn't know if you wanted to put it on the record.

MR. BAGNUOLA: If the Government doesn't need T then the Government is happy.

THE COURT: Okay, good. Thank you.

So, Mr. Mensch, I mentioned before that a written presentence report will be prepared by the Probation Department to assist the Court in sentencing, and you will be asked to give information for the report. You can have your lawyer and any members of your legal team, an investigator or any other folks from your legal team present in that process as well.

Mr. Anello, would you or other members of the team like to be present for that interview?

MR. ANELLO: We would, your Honor.

THE COURT: Thank you.

Mr. Mensch, as I mentioned also, you and your legal team and the Government will have the chance to raise any concerns about information in that report and then also to provide additional material to assist me in the sentencing process. And if there are victims, I

understand there are two financial institutions, one of which is here in court today, they will also be afforded an opportunity to be heard at the sentencing.

The parties conferred on a date, I understand, which is April 9th, 2025 at 10:30 a.m.

Is that correct?

MR. BAGNUOLA:  Yes, your Honor.

MR. ANELLO:  Yes, your Honor.

THE COURT:  Okay.  So we will set that as the date for sentencing.

Mr. Mensch, I want to tell you a little bit more about what sentencing is going to look like.  Today we had a very specific conversation so that I could ensure that your decision to waive indictment and to plead guilty to the charge in the information met the requirements set forth in the law.  When I engage in the sentencing process, I look at a lot more information and I ask a different question:  What is the appropriate sentence in your case based on the factors laid out in that statute that I mentioned before, 18 United States Code Section 3553(a)?

And that statute requires me to look at things like the advisory sentencing guideline range, which we discussed at length, as well as the specific circumstances of the crime that you committed.  It also requires me to

look at other factors, one of which is the history and circumstances of the defendant. And so what that means is that I can, and must, look at you as a whole person. I will look at the crime that you committed, the circumstances of that crime. I will take into consideration factors that Congress instructed me to, things liken ensuring that you don't commit that type of crime or that specific crime or another crime again in the future; that the sentence deters other people from committing that crime or similar crimes; but I'm also required to consider the other circumstances in your case, what the sentencing statute calls the history and circumstances of the defendant. And so that means I can look at you as a whole person and I can consider things that happened to you recently as well as things that happened to you many, many years ago and I can read any letters that members of your family, your friends, neighbors, and others choose to submit on your behalf, and I will look at those very closely, and I can listen to things that are of concern to you, such as any medical issues you may have, any personal goals for yourself such as educational or other goals and things of that kind, any financial assistance that you may provide to others, people who may depends on you.

So I just want you to know how seriously I take

51

my responsibility to sentence each and every person who comes before me in court appropriately and in compliance with the law, and I will look very closely at anything that you submit.

You will also have the opportunity to speak at the sentencing proceeding if you choose to. You are not required to. Nothing will be held against you if you don't, but if you do speak, I will listen very closely to what you have to say and factor that into my decision-making.

Do you have any questions for me about the sentencing process?

THE DEFENDANT: Not at this time, your Honor, but I appreciate that last comment.

THE COURT: Okay. Thank you.

So, we do have a Pretrial Services report, and I think our Officer Sanchez is here from pretrial. Thank you for preparing that.

Counsel, do you have any objections to the information contained in that report that you want to make on the record?

MR. BAGNUOLA: No, we don't, Judge. Thank you.

THE COURT: Mr. Anello?

MR. ANELLO: No, your Honor.

THE COURT: Okay.

I do understand that the parties have a joint bail application, and I'll let the Government put that on the record.

MR. BAGNUOLA: Yes, your Honor.

Before I do, there is just one other matter that I'd like to raise. It's a legal matter, which is the plea agreement in this case is the result of a very careful and painstaking negotiation between counsel. One of the elements of that negotiation related to the statute of limitations in this case. The statute of limitations for a violation of Section 371 is five years, which means today that statute has expired.

As part of the negotiation, Mr. Mensch, my understanding, has agreed to waive the statute of limitations under Section 371, understanding that if this case were to go to trial, he could be prosecuted under section 1344 which has a ten year statute of limitations and a much higher statutory maximum coop of 30 years.

So I would put that on the record for the Court's benefit, and I would also just respectfully request that the Court makes sure Mr. Mensch understands and consents that that's part of what is happening here today.

THE COURT: Okay. I'll let Mr. Anello address that.

MR. ANELLO: He is correct, your Honor. That was extensively discussed. It was discussed obviously with Mr. Mensch, with the Government, and we do waive the statute of limitations on the 371.

THE COURT: Thank you for clearing that up. I appreciate it.

Okay. So now bail.

MR. BAGNUOLA: Yes, your Honor.

Again, it's helpful background to let the Court know that we have been working on this case for several years, counsel has.

As a result of that, it should be said that Mr. Mensch has been aware of this investigation for approximately five years at this point. We have negotiated a addition position of this case on amicable mutually beneficial terms. As a result of, the Government does not believe that there poses a flight risk or clear and convincing evidence that he poses a continuing danger to the community.

All that being said, we would recommend a one hundred thousand dollars bond signed by Mr. Mensch alone with, sort of, check in requirements as recommended by pretrial and otherwise limiting Mr. Mensch's travel to continental United States, save only for, you know, the Court' leave and permission of pretrial and request that

54

Mr. Mensch surrender any passport and not apply for any new travel documents.

THE COURT: Anything to add, Mr. Anello.

MR. ANELLO: Well, your Honor, a little bit. I agree with what Mr. Bagnuola said. We have worked together relatively amicably. We are adversaries, for about four or five years on this matter. So Mr. Mensch was a lifelong resident living miles from this courthouse, had been very well aware of this, very cooperative in dealing with it, and I think it's why we could agree on this bail package. His wife is here today. His family's all local. And so I do think it's appropriate.

With regard to the -- there was -- in the report there's an indication that he had a rival. He has disposed of the rifle and we've given pretrial the receipt for that. After the interview, he surrendered the rival.

THE COURT: Okay. Thank you for clearing that up. I was going to ask about it, so I appreciate it.

And in terms of the passport, has he surrendered a passport?

MR. ANELLO: We have it here and it is prepared to be surrendered.

THE COURT: Okay.

So, my understanding is that the joint bail proposal is an unsecured bond in the amount of $100,000

signed by Mr. Mensch, with the conditions that Mr. Mensch submit to pretrial supervision and report to Pretrial Services as directed, continue or actively seek employment, surrender his passport, which I see that he intends to do because he has his passport with him today on October 2nd, but that surrender would take place at the latest no later than October 9th, but my understanding is it would happen today, and that travel would be limited to the continental United States, and that my understanding is Mr. Mensch has already surrendered firearms, so the condition would be to not possess any firearms going forward, and to provide proof of income as directed by Pretrial Services.

Anything to add to those conditions?

MR. BAGNUOLA:  Not from the Government.  Thank you, Judge.

MR. ANELLO:  No, your Honor, thank you.

THE COURT:  Okay.

So, based on my review of the information, the Pretrial Services report, and the conduct to which Mr. Mensch pled guilty, as well as representations of counsel as to the extensive cooperation and amicable relations in working towards today's resolution of the charge in this case, I am going to enter a bond ordering the release of Mr. Mensch on the proposed conditions.  And

Marie Foley, RMR CRR
Official Court Reporter

so I will sign that today.

And I find that the conditions of release that I just detailed will reasonably assure that Mr. Mensch will appear as required for sentencing here on April 9th, 2025 at 10:30 a.m. in this courtroom, and it will not endanger the safety of other people or of the community.

Anything further to address today?

MR. BAGNUOLA:  Not for the Government.  Thank you very much, judge.

MR. ANELLO:  No, your Honor.  Thank you very much.

THE COURT:  Okay.  Thank you very much.

Thank you, Mr. Mensch.  Be well.

THE DEFENDANT:  Thank you, your Honor.

MR. ANELLO:  Thank you, your Honor.  It's nice to appear before you for my first time.

THE COURT:  Thank you so much.  Take care.

(Time noted:  3:17 p.m.)